(Hamilton County Court of Common Pleas.)

FRANK T. CLEMENTS V. THE VILLAGE OF NORWOOD.

The holder of a perpetual lease with privilege of purchase is an owner within the meaning of the street assessment statutes.

Boundaries of lots are to be determined for the purpose of assessment by use or occupancy, and not by imaginary lines on a plat.

---

HOLLISTER, J.

Lot No. 9, Hopkins' subdivision in the village of Norwood, fronted on Sherman avenue a distance of 50 feet, and on Station avenue 116.33 feet, forming the northeast corner of those streets.

In October, 1891, the owner of the lot sold to plaintiff the 30 feet thereof, next east of Station avenue, making a lot 30 feet in front on Sherman by 116.33 on Station. In that year plaintiff erected a house on his lot in such a way as to indicate that it was intended to, and it did, front toward Sherman avenue. The east side of the house was 2 feet west of the east line of the 30 foot lot, and on the east line plaintiff's grantor built a wire fence.

In May, 1892, the owner of the 20 remaining feet of the lot leased the 20 feet to plaintiff, perpetually, with privilege of purchase within a certain time. The privilege has not been exercised, and its time limitation has not elapsed. In 1894, plaintiff constructed a house on the 20 feet which he now occupies as a residence, and he rents the house on the other 30 feet to another.

On October 5, 1891, the village council passed a resolution to "improve Station avenue," and the ordinance to improve was passed October 3, 1892. The ordinance to assess was passed July 21, 1893.

It is conceded by the defendant that under recent decisions of the Supreme Court in the Haviland and Sandrock cases, so-called, the assessment for the improvement of Station avenue should not be on the front feet abutting on that avenue, but should be against the lot as per the front feet on Sherman avenue. The plaintiff claims that the lot liable to assessment fronts but 30 feet on that avenue, while the defendant contends that the entire 50 feet of the lot as platted should bear their respective proportional assessment.

The plaintiff cannot escape the claim that, for purposes of assessment, he is the owner of the 20 foot lot of which he is the lessee perpetually with privilege of purchase. Says the Supreme Court on this subject, Davis v. Cincinnati, 36 Ohio St. 24, 26: "The owner referred to in section 626 must, as a general rule, be one having a freehold estate in the premises assessed. Perhaps exceptions to the rule exist. See Revised

Statutes, sections 2733, 4181. The term 'owner' does not, as a general rule, include the holders of chattels real. The assessment is on land, and it is an owner of land who is liable to the personal judgment. We are clear that the term 'owner' does not include one having no other interest than as lessee for a term of years. Any other construction would lead to absurd consequences. A tenant holding for a month might be personally bound for permanent public improvements of the most expensive character."

Section 4181 provides that "permanent leasehold estates, renewable for ——, shall be subject to the same law of descent as estates in fee are subject." * * *

The degree of permanency given to such estates by the acts of the parties, common use, and statutory enactment have invested them with the essential attributes of fee-simple, and the argument of the court in Davis v. Cincinnati, applied to a ten year lease, shows conclusively that it was the want of permanency and durability in that estate, which was the reason for that decision. Conversely the owner of a perpetual leasehold with privelege of purchase would be such an owner as must respond under the laws of assessment.

The ordinance to improve the street was passed in October, 1892, and plaintiff became the lessee of the 20 foot lot in the May preceding. The rights of the parties are fixed at the time of the passing of the ordinance to make the improvement: "Such ordinance is the resultant of those proceedings, (referring to certain necessary preliminaries) and evidences the final determination of the property owners through their agents, to assume whatever burdens may be entailed upon them by the law in force when the improvement ordinance is passed." Cincinnati v. Seasongood, 46 Ohio St. 296, 301.

The plaintiff then was, for the purpose of this case, the owner of the entire lot No. 9, but it does not follow that his entire property became subject to this assessment.

The mere fact that the original corner lot had a frontage of 50 feet on the plat as recorded, could not prevent its owner from dividing the lot as best pleased himself. If the plaintiff's grantor had, after conveying the 30 feet to plaintiff retained the other 20 feet himself, it could scarcely be successfully maintained that his 20 feet should be assessed with plaintiff's 30 for this improvement. Imaginary lines are not the necessary demarkations of a lot, as the lines may appear on recorded plats. The use to which the property is put, and the nature of its occupation, are the tests to which the question of what is the lot should be referred. The Superior Court in General Term in the case of Gibson v. Cincinnati, 27 Bull. 80, 83, say: "It has long been established in assessment cases, that lots may exist without being a part of any numbered and recorded subdivision, and without appearing on any plat," and the court refer to a decision by Harmon. J., in Matthews v. Cincinnati, 16 Bull. 249, as laying down the rule, "that lots are to be determined by use and occupation in preference to imaginary lines and numbers by which they may be designated in a recorded subdivision." See, also, Springer v. Avondale, 35 Ohio St. 620, 625.

The plaintiff became the owner by deed of a corner lot 30 by 116 feet, and improved it by constructing a building appropriate to the size and situation of his lot. This became the corner lot subject to assessment for the improvement of Station avenue, and it can make no difference, for purposes of assessment, whether his lessor for the next 20 feet had retained that property himself or had conveyed it by a separate conveyance to the

plaintiff at a later time. The plaintiff used and improved the 20-foot lot in a manner appropriated to its size, situation, and occupies it as premises entirely separate and distinct from the other. He has two lots, not one. But defendant claims that plaintiff can not recover, because he has not tendered the amount due on the 30 feet, and bases the claim on section 5851, Rev. Stat., which provides: "If the plaintiff in an action to enjoin the collection of taxes or assessments admit a part thereof to have been legally levied, he must pay or tender the same admitted to be due." * * * And defendant cites Frazier v. Seibern, 16 Ohio St. 615, to the effect that one seeking to enjoin the collection of an illegal portion of a tax must first pay that which is legally assessed. This is the law, but the plaintiff cannot pay unless he knows how much he should pay. The circuit court, Ehni v. Columbus, 3 C. C. 493, holds that, "when the valid portion of an assessment can be ascertained, a court of equity will enjoin the collection of the illegal portion only, upon the condition that the valid portion be paid." Now, it appears that the defendant itself is so far at sea on the subject of what is the proper assessment to be levied for the improvement of Station avenue, that it has appointed, or is about to appoint, a commission, a part of whose duty shall be to determine that question. Under these circumstances, how can the plaintiff ascertain what amount is properly chargeable against his thirty feet?

Decree for plaintiff.

Wilby & Wald, for plaintiff.

W. E. Bundy, for the Village.